UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20532-CIV-LENARD/TORRES

CATALINA RENTAL APARTMENTS, INC.,

    Plaintiff,

vs.

PACIFIC INSURANCE COMPANY, LTD.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE
THE EXPERT TESTIMONY OF JAMES KRIEG**

This matter is before the Court on Defendant, Pacific Insurance Company, Ltd.'s Motion to Strike the Expert Testimony of James Krieg [D.E. 101]. After considering the arguments raised in the parties' briefs, the Court concludes that Plaintiff's expert is proposing to testify to reliable scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. As such, Defendant's motion to strike James Krieg's testimony is denied for the reasons set forth below.

### I. BACKGROUND

Catalina Rental Apartments, Inc. ("Catalina") sued Pacific Insurance Company, Ltd. ("Pacific") for breach of contract, alleging that Pacific improperly denied coverage under the insurance policy it issued Catalina for damages sustained by Catalina's apartment complex as a result of plumbing problems that were allegedly caused by muriatic acid that was poured down the drain pipe by Catalina's employees.

Plaintiff hired James Krieg ("Krieg") to examine the affected drain pipes, which were removed from Catalina. In his deposition, Krieg stated that his task was to determine the

cause of the corrosion to the pipes. Krieg's report ultimately concluded that the location and extent of the corrosion did not appear to be the result of normal service and that the corrosion was due to the presence of a mineral acid or a strong base. Krieg further noted that testing did not reveal the presence of iron chloride, which would have indicated that muriatic acid had been poured into the pipe. Krieg also clarified that, in a strong acidic environment, any iron chloride that may have formed would have remained in solution and probably would have drained away.

Defendant asserts in his motion that Krieg's expert opinion is not relevant because he cannot state that muriatic acid was ever used in the cast iron pipes or that the damage to the pipes was caused by muriatic acid. Defendant also asserts that Krieg's opinions are not based on sound methodology.

## II.  LEGAL STANDARD

When faced with a proffer of expert testimony under Rule 702, the party offering the expert testimony carries the burden of laying the proper foundation, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Thus, the trial court must function as a gatekeeper and engage in a rigorous three-part inquiry to determine whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)). The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and

although there is inevitably some overlap, they remain distinct concepts that must be individually analyzed. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The Court's analysis must keep in in mind that "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd*, 326 F.3d 1333, 1341 (11th Cir. 2003); *Maiz v. Virani,* 253 F.3d 641, 666 (11th Cir. 2001) ("A district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'") (quoting *Allison,* 184 F.3d at 1311). "Quite the contrary, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Quiet Technology,* 326 F.3d at 1341 (quoting *Daubert,* 509 U.S. at 596).

### III.   ANALYSIS

#### A.   *Expert's Qualifications*

Although Defendant does not challenge Krieg's qualifications, the Court will nonetheless examine them.  Krieg is a senior engineer at Chemir Analytical Services in Maryland Heights, Missouri.  He obtained an M.S. in metallurgical engineering in 1961. For more than forty years, he has worked in the field of material and systems failure analysis.  He is also a member of the American Society for Metals.  He has been retained on three previous occasions to provide expert testimony for use in litigation.  The Court finds that Krieg is thus qualified to give an expert opinion on the possible cause of cast iron drain pipes corrosion. *See Quiet Technology,* 326 F.3d at 1343; *United States v. Paul,* 175 F.3d 906, 911 (11th Cir. 1998).

### B. *Reliability of the Expert's Methodology*

In determining the reliability of a scientific expert opinion, the Court considers:

(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Quiet Technology,* 326 F.3d at 1341 (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). This list of factors, however, does not exhaust the different considerations that may bear on the reliability of an expert opinion. *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). "A federal court should consider any additional factors that may advance its Rule 702 analysis." *Id.* Some of those factors may apply in a given case, while others may not. "Whether the *Daubert* opinion factors are even pertinent to assessing reliability in a given case will 'depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *United States v. Brown,* 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Kumho Tire,* 526 U.S. at 150).

At his deposition and in his expert report, Krieg stated that he removed residue from the pipes and sent it to H & M Analytical for an x-ray diffraction analysis. He also performed an elemental analysis with the use of a scanning electron microscope. In addition to using a scanning electron microscope to detect elements present in a sample, he removed a cross section of the pipe and analyzed it through the use of photomicrographs.

Krieg ultimately concluded that the damage to the pipe came from the inside out, rather than from outside the pipe, a point on which the parties' experts are in agreement. He also concluded that the damage was consistent with contact with a strong mineral acid. Muriatic acid is one of three mineral acids that could have caused the damage. The

other two are sulfuric acid and nitric acid. Muriatic acid, according to Krieg, attacks cast iron pipe most vigorously. Krieg relies on a chapter in "Corrosion of Cast Irons" published by the American Society of Materials.

Krieg's methodology is not only discernible and rooted in real science, it is also similar to the methodology employed by Defendant's expert, which the Court has already found reliable in an accompanying order.

### C. *Helpfulness of Expert's Testimony*

Plaintiff primarily challenges Krieg's testimony on the basis that it is not relevant to an issue in this case because Krieg cannot definitively state that muriatic acid caused the pipes' corrosion. *Quiet Technology*, 326 F.3d at 1347, makes clear that *Daubert* reviews the relevance of proposed expert testimony on two separate points. First, *Daubert* determines whether the testimony is related to an issue in the case. *Id.* There is no question that Krieg's testimony is related to an issue in this case. The complaint alleges that the plumbing problems at Catalina were caused by muriatic acid that had been poured down the drain pipes. Krieg's expert report states that muriatic acid attacks cast iron more vigorously than any other acid and that the corrosion damage found in the pipe was attributed to the presence of a mineral acid or a strong base. Krieg's testimony would tend to make Plaintiff's assertion that muriatic acid caused the pipe's corrosion more probable. As a result, the Court finds that Krieg's testimony is relevant to the extent that it relates to an issue in this case.

*Daubert*'s second inquiry focuses on whether there is a scientific connection between the proposed testimony and the disputed facts in the case. *Id.* Krieg's testimony, therefore, must thus be excluded, even if it generally constitutes scientific knowledge, if it is not the particular scientific knowledge necessary for the issues in the case.

Defendant's relevance arguments appear to more squarely fall under the second prong of the relevance inquiry envisioned by *Daubert*. It argues that, if Plaintiff intends to prove that muriatic acid was poured down the pipes damaging them, Krieg's testimony is not scientifically connected to the facts of the case if he cannot opine that muriatic acid was poured down the pipes.

The Court disagrees. Krieg's testimony can be scientifically connected to the facts at issue and not come to the conclusion that muriatic acid was poured down the pipes. As long as Krieg's testimony makes a scientific connection between muriatic acid and its possible effects on cast iron pipes and makes Plaintiff's theory that muriatic acid was poured down the pipes more probable, his testimony is relevant and admissible. Plaintiff can introduce other witnesses at trial to show that muriatic acid was poured down the pipes; Krieg does not absolutely have to testify to that. One such witness could be the employees who actually poured the muriatic acid. Krieg's testimony is scientifically connected to the disputed facts in that his knowledge of the effects of muriatic acid on cast iron pipe supports Plaintiff's version of what caused the damage to the pipes. *See Heller v. Shaw Industries, Inc.,* 167 F.3d 146, 152 (3d Cir. 1999) ("an expert opinion must be based on reliable methodology and must reliably flow from that methodology and the facts at issue – but it need not be so persuasive as to meet a party's burden of proof or even necessarily its burden of production."); *City of Tuscaloosa v. Harcros Chem., Inc.,* 158 F.3d 548, (11th Cir. 1999) (expert testimony "need not prove the plaintiffs' case by themselves"); *Pickett v. IBP, Inc.,* 2003 WL 24275809, *8 (M.D. Ala. Apr. 10, 2003) (rejecting relevance argument to expert testimony in antitrust case that did not show that defendants' use of captive supply caused low market prices because the testimony could corroborate the testimony of other witnesses and evidence).

The Court, therefore, finds that Krieg's testimony does make Plaintiff's theory of the case more probable than not, thereby rendering it relevant evidence under Rule 702.

### *IV.  CONCLUSION*

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Defendant, Pacific Insurance Company, Ltd.'s Motion to Strike the Expert Testimony of James Krieg [D.E. 101] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 2nd day of July 2007.

_____
EDWIN G. TORRES
United States Magistrate Judge